# United States District Court
# Northern District of Indiana
# Hammond Division

| | | |
|---|---|---|
| Dawson Goodpaster, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 1:09-CV-59 JVB |
| | ) | |
| Materials Handling Equip. Corp., | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Plaintiff Dawson Goodpaster worked for Defendant Materials Handling Equip. Corp.

("MHEC") for thirty-five years. On August 4, 2008, Defendant terminated Plaintiff. At that time,

Plaintiff was fifty-nine years old. The individual who absorbed Plaintiff's duties, Chris Fisher,

was forty-one years old. Plaintiff alleges his termination was illicitly based on his age, in

violation of the ADEA. Defendant contends it terminated Plaintiff, as well as two other

employees, because of a sharp decline in its business. Defendant has moved for partial summary

judgment on Plaintiff's ADEA claim (DE 26).


## A. Summary Judgment Standard

A motion for summary judgment must be granted "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) further requires the entry of summary judgment,

after adequate time for discovery, against a party "who fails to make a showing sufficient to

establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A party seeking summary judgment bears the initial responsibility of informing a court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party supports its motion for summary judgment with affidavits or other materials, it thereby shifts to the non-moving party the burden of showing that an issue of material fact exists. *Keri v. Bd. of Trust. of Purdue Univ.*, 458 F.3d 620, 628 (7th Cir. 2006).

Rule 56(e) specifies that once a properly supported motion for summary judgment is made, "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts to establish that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).  In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *Keri*, 458 F.3d at 628. A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson v. Liberty Lobby*, 477 U.S. 242, 249–50 (1986).

**B. Background and Facts**

In 2008, MHEC was a closely held corporation that focused on the sale and service of heavy machinery—chiefly fork trucks and cranes. (Watkins Dep. at 5–8.) Helen Fisher owned 51% of MHEC's stock. (*Id.* at 10.) The remainder of shares was equally divided between Helen Fisher's

two sons, Todd and Chris Fisher, as well as her stepson Tom Fisher. (*Id.*; Goodpaster Dep. at 9–10.) Kellen Watkins served as MHEC's President. (Watkins Dep. at 5.)

Goodpaster began working at MHEC in 1972. (*See* Goodpaster Dep. at 7.) Although he started as a mechanic, he eventually worked his way into a service representative position and later "inherited a sales position" within the company. (*Id.* at 7–10.) As of 2008, Goodpaster served MHEC for over thirty-five years; he received a base salary of $45,000 as well as a 25% commission for the sale of new fork trucks or a 5% commission for the sale of used trucks. (*Id.* at 34–35; Def.'s Answers Pl.'s First Set Interrogs. ¶ 4.) Before his termination, Plaintiff serviced MHEC's southern territory. (*See* Watkins Dep. at 18, 29.)

When asked to describe MHEC's financial condition around 2007, Watkins indicated that the corporation was losing money. (*See id.* at 17–18.) At the time of his deposition, Watkins testified that MHEC's situation was still "ugly": in short, MHEC was no longer profitable. (*Id.* at 38.) Notably, as of May 13, 2010, MHEC "entered into a Voluntary Turnover Agreement with Grabill Bank, wherein MHEC surrendered all of its assets." (Watkins Aff. ¶ 9.)

Beginning in early 2008, MHEC attempted to cut costs by revising its mileage reimbursement program. (*See* Goodpaster Dep. at 16; Watkins Aff. ¶ 4.) Viewing the change in policy as "a personal attack on [his] honesty and integrity," Plaintiff vehemently protested it. (Watkins Aff. Ex. A, March 12, 2008, Goodpaster-Chris Fisher e-mail correspondence.) In his e-mail response to Goodpaster's complaints, Tom Fisher indicated that the company had been struggling financially for years and needed to "either sell more or cut expenses" to survive. (Watkins Aff. Ex. A, March 13, 2008, Tom Fisher-Goodpaster e-mail correspondence.) Additionally, Tom Fisher informed Goodpaster that the Fisher family made a substantial no-interest loan to the company to keep it running and that he, personally, had to cut his pay in half

so that the business could continue to operate. (*See id.*) On March 17, 2008, Plaintiff sent an email to Watkins, Helen, Tom, Todd, and Chris Fisher informing them that he had filled out a complaint with the EEOC alleging that MHEC was discriminating against him on the basis of his age. (*See* Watkins Aff. Ex. A, March 17, 2008, Goodpaster-Watkins/Fisher e-mail correspondence.)

Both parties agree that MHEC terminated Goodpaster on August 4, 2008. (Pl.'s Br. Opp'n Summ. J. at 12.) MHEC decided to remove Goodpaster in about mid-July of 2008, and Watkins, himself, made the ultimate termination decision. (Def.'s Answers Pl.'s First Set Interrogs. ¶ 5; Watkins Dep. at 15). Watkins indicated that MHEC terminated Goodpaster because of an overall reduction in the company's revenues. (Watkins Dep. at 15.) Moreover, in order "to remain financially viable," MHEC had to eliminate more than just Goodpaster's job; the company was forced to terminate two other sales employees as well: Jean Dobbs—a fifty-seven year old Sales Coordinator—and Randy Rea—a forty-eight year old sales person. (Watkins Aff. ¶ 6; Def.'s Answers Pl.'s First Set Interrogs. ¶ 8.) Randy Rae was "identical to [Goodpaster]" in his job duties, and another employee named Gary Chevillet absorbed Rae's duties; the record does not specify whether another employee absorbed Jean Dobbs's duties or if her duties were eliminated entirely. (*See* Watkins. Dep. at 13, 17–18.)

Goodpaster asserts that his termination was motivated by illicit age-based criteria in violation of the ADEA. In support of his theory, Goodpaster argues that Chris Fisher informed MHEC's employees that the corporation was financially sound and that the southern sales staff was "holding [its] own" and managing to turn a profit. (Goodpaster Dep. at 16–18.) Goodpaster asserts that he heard these statements two months before being terminated. (*See id.*) Next, beginning around August 2007, Watkins and Tom Fisher allegedly began to question Goodpaster

about his retirement plans. (*See id.* at 22–23.) Troubled by these ongoing questions, Goodpaster went to Chris Fisher to resolve the issue. (*See id.*) Plaintiff alleges that Chris Fisher originally promised to fix the problem, but ultimately nothing was done and the retirement-based questions did not cease. (*See id.*) Goodpaster stated that he "really started to feel the pressure of [his] age coming into play" due to this. (*Id.* at 23.) Further, Goodpaster maintains that his age may have caused him to not get an offer to run MHEC's Fort Wayne Territory in 2006. (*See* Goodpaster Decl. ¶ 10.)

Defendant concedes in its brief that "Goodpaster's responsibilities were predominantly transferred to and absorbed by 41-year-old Chris Fisher." (Def.'s Br. Supp. Mot. Partial Summ. J. at 5; Watkins Aff. ¶ 8.) Ultimately, though, MHEC lost the last of its accounts in its southern territory. (Watkins Dep. at 18, 29.) The Defendant acknowledges that Goodpaster was in the ADEA's protected class at the time his position was eliminated and agrees that Goodpaster was the "subject of an adverse employment action in the form of termination." (Def.'s Br. Supp. Mot. Partial Summ. J. at 14.) Next, the Defendant concedes that Goodpaster met his sales expectations. (*See id.*) As Watkins himself stated, Goodpaster was "a pretty good salesman" who knew trucks better than even Todd Fisher. (Watkins Dep. at 15, 33.) In his brief, Plaintiff provided data documenting his positive sales figures. (*See* Pl.'s Br. Opp'n Summ. J., Ex. A.) Finally, Goodpaster testified that during his last three years of employment at MHEC, he assisted Gary Chevillet close over $200,000 in sales in the northern territory. (*See* Goodpaster Decl. at 1–2.)

Plaintiff filed a formal charge with the EEOC on November 5, 2008, alleging discrimination on the basis of his age. (Def.'s Br. Supp. Mot. Partial Summ. J. at 5.) He received a right to sue letter on February 10, 2009. (*See id.*) On March 9, 2009, Plaintiff filed a complaint in the District

Court for the Northern District of Indiana alleging that MHEC had willfully violated the ADEA and discriminated against him because of his age. (*See id.*)

## C. Discussion

### (1) *Plaintiff's Age Discrimination Claim*

"In a mini-RIF [reduction in force], a single employee is discharged and his position is not filled. However, the employee's responsibilities are assumed by other members of the corporate workforce." *Michas v. Health Cost Controls of Ill.*, *Inc.*, 209 F.3d 687, 693 (7th Cir. 2000). To survive summary judgment in an age discrimination case, Plaintiff must come forward with evidence from which a reasonable jury could conclude that his age was the but-for cause of Defendant's decision to terminate him. *See Gross v. FBL Fin. Serv.*, *Inc.*, 129 S. Ct. 2343, 2350 (2009). An ADEA plaintiff may use either a direct or indirect method of proof to demonstrate illicit age-based discrimination. *See Faas v. Sears*, *Roebuck & Co.*, 532 F.3d 633, 641 (7th Cir. 2008). Under the direct method, if the employee does not have what amounts to an admission of discrimination, she may use circumstantial evidence to create a "convincing mosaic" that points directly to a discriminatory reason for the decision. *Petts v. Rockledge Furniture L.L.C.*, 534 F.3d 715, 720 (7th Cir. 2008) (quoting *Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004)). Circumstantial evidence under the direct method of proof may include: (1) suspiciously timed statements, ambiguous oral or written statements, or behavior toward or comments directed at other employees in the protected group; (2) evidence that similarly situated employees outside the protected class received systematically better treatment; and/or (3) "evidence that the employee was qualified for the job in question but was passed over in favor of

a person outside the protected class and the employer's reason is a pretext for discrimination." *Nagle v. Vill. of Calumet Park*, 554 F.3d 1106, 1114–15 (7th Cir. 2009) (citations omitted).

If a plaintiff uses the indirect method of proof to prove her case, she will have to establish a prima facie case of discrimination. *See Filar v. Bd. of Educ.*, 526 F.3d 1054, 1059–60 (7th Cir. 2008). To establish a prima facie case in the mini-RIF context, a plaintiff must demonstrate: (1) she is a member of a protected class; (2) she was meeting her employers' legitimate performance expectations; (3) she suffered an adverse employment action; and (4) her duties were absorbed by employees not in the protected class. *See Merillat v. Metal Spinners, Inc.*, 470 F.3d 685, 690 (7th Cir. 2006). In mini-RIF cases, the Court of Appeals for the Seventh Circuit has "dispensed with the requirement that the plaintiff show 'similarly situated' employees who were treated more favorably." *Michas*, 209 F.3d at 693. Rather, "because the fired employee's duties are absorbed by other workers and the employee was '"replaced," not eliminated,' [the Court of Appeals for the Seventh Circuit] only require[s] that a plaintiff demonstrate that his duties were absorbed by employees who were not members of the protected class." *Id.* (citing *Bellaver v. Quanex Corp.*, 200 F.3d 485, 495 (7th Cir. 2000)). "An ADEA plaintiff who shows that someone 'substantially younger' was retained instead of the plaintiff need not prove that the replacement is outside the protected class." *Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 321 (7th Cir. 2003) (citing *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 312 (1996)). In the age discrimination context, the fact that a "substantially younger" individual replaces a plaintiff may be a reliable indicator of age discrimination. *See id.* (citing *O'Connor*, 517 U.S. at 313; *Michas*, 209 F.3d at 693). Generally, "substantially younger" means ten or more years younger. *Id.* at 322 (citing *Hartley v. Wis. Bell, Inc.*, 124 F.3d 887, 893 (7th Cir. 1997)).

If a plaintiff establishes a prima facie case, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason (or reasons) for its actions. *See Ritter v. Hill 'N Dale Farm, Inc.*, 231 F.3d 1039, 1043 (7th Cir. 2000). When a defendant comes forward with non-discriminatory reasons to explain its conduct, the burden shifts back to the plaintiff to prove that the proffered explanation is merely a pretext for discrimination. *See Duncan v. Fleetwood Motor Homes of Ind., Inc.*, 518 F.3d 486, 491 (7th Cir. 2008). "[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000).

### (2) *Plaintiff Established a Prima Facie Case*

Despite Defendant's contentions to the contrary, Plaintiff has established a prima facie case of age discrimination in the mini-reduction in force context. Defendant does not argue that Plaintiff has established prima facie elements (1) through (3) in its brief. (*See* Def.'s Br. Supp. Mot. Partial Summ. J. at 14.) Defendant only argues that Plaintiff cannot meet the fourth element because his "duties were not absorbed by someone outside of his protected class, but by another employee over the age of forty." (*Id.*) This position contradicts the law in the Seventh Circuit. At the time of his termination, Plaintiff was fifty-nine year old; in comparison, Chris Fisher was only forty-one years old. Because Chris Fisher is more than ten years younger than the Plaintiff, Fisher is "substantially younger." It follows, then, that because Plaintiff was replaced by someone substantially younger, Plaintiff need not show that his duties were absorbed by someone outside of his protected class. *See Balderston*, 328 F.3d at 321–22.

**(3)** *Defendant Produced a Legitimate Reason, but Genuine Issues of Material Fact Regarding Pretext Remain*

Defendant now has the obligation to produce a legitimate, nondiscriminatory reason for Plaintiff's termination. It met this burden by indicating that it terminated Plaintiff, and others, because the company was struggling financially and was compelled to restructure its sales positions. (Watkins. Aff. ¶ 6.) The burden, therefore, shifts back to Plaintiff to demonstrate that this reason is merely a pretext for unlawful discrimination. The Plaintiff may demonstrate pretext directly by showing that "a discriminatory reason more likely motivated" his termination than not, or indirectly by showing that Defendant's explanations are "unworthy of credence." *Senske v. Sybase*, *Inc.*, 588 F.3d 501, 507 (7th Cir. 2009) (citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)). To show that Defendant's explanations are not credible under the indirect method, Plaintiff must ultimately prove by a preponderance of evidence that they are not the real reasons for his termination, they have no grounding in fact, or they are insufficient to warrant the termination decision. *See id.* (citing *Atanus v. Perry*, 520 F.3d 662, 674 (7th Cir. 2008)). At the end of the day, the question is simply whether the same events would have transpired if Plaintiff had been younger than forty or close-in-age to Chris Fisher. *See id.* (citing *Gehring v. Case Corp.*, 43 F.3d 340, 344 (7th Cir. 1994)). Also, the Court takes note of the fact that when an explanation does not arise until late in litigation, this may be enough in-and-of-itself to preclude summary judgment for the relevant party "since a jury could reasonably find that [the party's] failure to come forward with this explanation earlier makes it not credible." *Zaccagnini v. Charles Levy Circulating Co.*, 338 F.3d 672, 678 (7th Cir. 2003) (citations omitted). As Defendant is the party moving for summary judgment, all reasonable inferences must be drawn in Plaintiff's favor.

(a) *Persistent Retirement Inquiries*

Watkins made the final decision to terminate Plaintiff. (Watkins Dep. at 15.) Plaintiff alleges that Watkins, in addition to Tom Fisher, both persistently questioned him about his retirement plans until he was terminated in 2008. (*See* Goodpaster Decl. ¶ 8.) Plaintiff also states that this questioning made him so uncomfortable that he brought the matter up with Chris Fisher to cease the inquiries. (Goodpaster Dep. at 22–23.) In *Pitasi v. Gartner Group*, *Inc.*, the Court of Appeals for the Seventh Circuit held that an employer's suggestion of retirement, alone, will not give rise to an inference of discrimination. *See* 184 F.3d 709, 715 (7th Cir. 1999). Repeated and coercive inquiries into an employee's retirement plans, however, can give rise to a reasonable inference of age-based discrimination. *See id.* (citing *Greenberg v. Union Camp Corp.*, 48 F.3d 22, 28–29 (1st Cir. 1995)); *see also Kaniff v. Allstate Ins. Co.*, 121 F.3d 258, 263 (7th Cir. 1997) (indicating that situations where an employee is "hounded about retirement," may permit a jury to infer that "the comments may reflect the employer's intention to rid itself of older workers by subtly pressuring them into retiring."). "[I]t is the ***conditions surrounding the offer***, rather than the offer of early retirement, that count in considering whether the ADEA is violated." *Pitasi*, 184 F.3d at 715 n.7 (citations omitted).

The Court is unable to conclude that managements' retirement questions were innocent and did not express Defendant's intent to rid itself of Plaintiff because of his age. Likewise, Plaintiff's unchallenged contentions that the retirement questions were ongoing, at least to some extent, since the summer of 2007 may allow a jury to conclude that Defendant's managers consistently—and improperly—tried to coerce the Plaintiff into an early retirement. (*See* Goodpaster Dep. at 22–23.) More evidence is required to clarify the circumstances, conditions, and frequency of these questions. Summary judgment is improper because the Plaintiff has raised

genuine issues of material fact about the nature and circumstances of Defendant's retirement questions. *See Pitasi*, 184 F.3d at 715 n.7.

(b) *Defendant Gave Plaintiff No Reason Why He was Fired During the Summer of 2008*

Plaintiff asserts that at the time of his termination Defendant gave him no explanation for letting him go. (*See* Goodpaster Dep. at 18.) Specifically, Plaintiff maintains that Chris Fisher—the manager who both replaced him and told him he had been fired—said nothing about the company's financial situation or that Defendant was unhappy with Plaintiff's job performance. (*See id*. at 18–19.) Plaintiff asserts that this silence is especially dubious when coupled with Chris Fisher's statements made two months earlier that Plaintiff's southern group was still a successful sales unit. (*See* Pl.'s Br. Opp'n Summ. J. at 10–11, ¶¶ 16–19; Goodpaster Dep. at 17–19.) The record does not contain a statement by Chris Fisher indicating why he did not give Plaintiff a reason for his termination on August 4, 2008, nor does the record offer an explanation for this silence by another of Defendant's officers. As Watkins himself indicated, Plaintiff was a successful salesman who served the company well for several decades. (*See* Watkins Dep. at 33–35; Goodpaster Decl. ¶¶ 5–6.) In effect, Defendant's initial silence casts doubt on its subsequent explanations.

Plaintiff claims that Defendant never informed him that Chris Fisher was staying with the company because Fisher was a shareholder whereas he was not. (*See* Goodpaster Decl. ¶ 7.) Indeed, as Plaintiff's brief in opposition indicates, Watkins never stated that he was compelled to keep Chris Fisher as an employee because he was a minority shareholder. (*See* Pl.'s Br. Opp'n Summ. J. at 2.) Instead, when asked at his deposition why the Defendant kept Chris Fisher on

staff while firing Plaintiff, Watkins responded that the company had to evaluate "a lot of different" options. (Watkins Dep. at 35.)

Next, counsel for the Defendant first discussed nepotism in its brief for summary judgment as a legitimate, non-discriminatory reason for discharging Plaintiff and retaining Chris Fisher. (*See* Def.'s Br. Supp. Mot. Partial Summ. J. at 19.) Defendant's counsel later devoted substantial space in its reply brief to arguing that nepotism protected the Fisher family members from losing their jobs. (*See* Def.'s Reply Br. Supp. Mot. Partial Summ. J. at 4–6.) However, because of the Defendant's delay in raising its nepotism explanation, a reasonable jury could view this defense as a non-credible, after-the-fact explanation for Plaintiff's termination. *See Zaccagnini*, 338 F.3d at 678 ("The fact that this explanation did not arise until CLCC's reply brief may be enough in and of itself to preclude summary judgment for CLCC on this issue, since a jury could reasonably find that its failure to come forward with this explanation earlier makes it not credible." (citations omitted)). As such, summary judgment is improper.

## D. Conclusion

The Court DENIES Defendant's motion for partial summary judgment (DE 26).

SO ORDERED on October 27, 2010.


  S/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN
UNITED STATES DISTRICT JUDGE